UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ANDRAE P. ATKINSON,

        Plaintiff,

    v.                                      18-CV-867
                                              DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

---

On August 7, 2018, the plaintiff, Andrae P. Atkinson, brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On February 25, 2019, Atkinson moved for judgment on the pleadings, Docket Item 10; on May 22, 2019, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 15; and on June 12, 2019, Atkinson replied, Docket Item 16.

For the reasons stated below, this Court grants Atkinson's motion in part and denies the Commissioner's cross-motion.[1]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the

---

[1] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I.  ALLEGATIONS

Atkinson argues that the ALJ erred in three ways. Docket Item 10-1 at 15-29. First, Atkinson argues that "the ALJ improperly ignored evidence that supported additional conditions and limiting effects of [Atkinson's] medical conditions[ ] and failed to account for these in the residual functional capacity ('RFC') findings." *Id.* at 15. Second, he argues that "the ALJ failed to obtain missing treatment records and [a] treating assessment." *Id.* at 21. Finally, he contends that the two occupations identified by the vocational expert ("VE") "did not adequately account for [Atkinson's] limitations and functional effects." *Id.* at 26. This Court agrees that the ALJ erred and remands

2

the matter to the Commissioner for reconsideration of Atkinson's RFC, including the effect, if any, of his obesity and frequent urination on his functional capacity.

## II.     ANALYSIS

### A.     RFC Determination

When determining a plaintiff's RFC, the ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight.  'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists."  *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).  Thus, while the ALJ may consider the opinions of "other sources"—e.g., nurse practitioners—there is no obligation to assign weight or give deference to those sources.  *Id.*  But the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  SSR 06-03P, at *6.  When there is conflicting evidence in the claimant's record, "[t]he consistency of the opinion with the other evidence in the record is a proper factor for an ALJ to consider when weighing an opinion from an 'other source.'"  *Id.* at *4 (citing 20 C.F.R. § 404.1527(d) and § 416.927(d)).

Here, the ALJ found that Atkinson had the following severe impairments:  "status post reconstruction of left ankle fracture[ ] and vertigo."  Docket Item 6 at 16.  The ALJ

3

then found that Atkinson has the RFC "to perform less than the full range of sedentary work."[2]  *Id.* at 17.  More specifically, the ALJ determined that Atkinson could have "no more than incidental use of stairs[ and] should not work at unprotected heights or around dangerous machinery, instruments, or chemicals."  *Id.*  In reaching this determination, the ALJ gave "great weight" to the opinion of Abrar Siddiqui, M.D., who performed a consultative internal medicine examination of Atkinson.  *Id.* at 20.

Atkinson argues that "the ALJ failed to account for elevation of [Atkinson's] legs, and any off-task or missed workday limitations due to the combination of his chronic pain, vertigo, and urinary frequency."  Docket Item 10-1 at 15-16.  Instead, Atkinson says, the ALJ erroneously relied on Dr. Siddiqui's opinion, which Atkinson claims "does not adequately reflect [Atkinson]'s conditions, severity of conditions[,] and limitations."  *Id.* at 16-17.  Atkinson further contends that the ALJ "did not address [Atkinson]'s obesity even though it reasonably would exacerbate any weight-bearing activities and joints."  *Id.* at 19 (citing *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p, 2002 WL 34686281, at *1 (Sept. 12, 2002)).

   **1. Obesity**

Social Security Ruling 02-1p explicitly "requires an ALJ to consider the effects of obesity" when assessing a claimant's RFC because "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

considered separately." *DeWitt v. Astrue*, 381 F. App'x 782, 785 (10th Cir. 2010) (summary order) (second quoting SSR 02-1p, 2002 WL 34686281, at *1).  The regulations define "three levels of obesity":  Level I includes body mass indexes ("BMIs") of 30.0-34.9; Level II includes BMIs of 35.0-39.9; and Level III includes BMIs greater than or equal to 40.  SSR 02-1p, 2002 WL 34686281, at *2.  "When the evidence in a case does not include a diagnosis of obesity, but does include clinical notes or other medical records showing consistently high body weight or BMI . . . [, an ALJ] will [generally] use [his or her] judgment to establish the presence of obesity based on medical findings and other evidence in the case record."  *Id.* at *3.  "As with any other impairment, [the ALJ] will explain how [the ALJ] reached [his or her] conclusions on whether obesity caused any physical or mental limitations."  *Id.*

The Commissioner does not dispute that Atkinson's medical records evidenced obesity.  *See* Docket Item 15-1 at 11.  Nor could he.  Numerous records show that Atkinson's BMI placed him squarely in the obese range.  *See, e.g.*, Docket Item 6 at 430 (BMI of 32.73); *id.* at 434 (BMI of 33.20); *id.* at 439 (BMI of 32.58).  The Commissioner also does not dispute that the ALJ did not "explicitly discuss" the effect of Atkinson's obesity on his functioning—or, in fact, address obesity at all.  *See* Docket Item 15-1 at 11.  Instead, the Commissioner argues that "[t]he record contains no evidence indicating that obesity . . . impaired [Atkinson]'s ability to work, nor [was obesity] alleged as a basis for disability in his disability report."  *Id.* (citing Docket Item 6 at 313).  But that argument ignores the explicit requirements of Ruling 02-1p.  See *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 275-76 (N.D.N.Y. 2009) ("The [Commissioner] has suggested that the ALJ's failure to mention obesity in his decision should be excused because [the p]laintiff

5

never alleged obesity as a disabling condition or limiting factor.  This argument is inapposite because the regulations specifically require an ALJ to consider impairments a claimant says she has *or those 'about which [he] receive[s] evidence.*'" (emphasis added) (quoting 20 C.F.R. §§ 404.1512(a); 416.912(a))).

What is more, Dr. Siddiqui's opinion—on which the ALJ relied in formulating Atkinson's RFC—never even mentions obesity.  *See* Docket Item 6 at 466-70; *cf. Wilson v. Colvin*, No. 14-CV-5666 (DF), 2015 WL 5786451, at *30 (S.D.N.Y. Sept. 29, 2015) (finding ALJ's failure to explicitly discuss the claimant's obesity harmless because the ALJ "adopt[ed] the limitations suggested by physicians who . . . *directly* considered the effects of obesity in their opinions" (emphasis added)).  Although Dr. Siddiqui recorded Atkinson's height and weight, he did not calculate his BMI.  Nor did he "explain how [he] reached [his] conclusions on"—or even address—"whether obesity caused any physical or mental limitations."  *See* SSR 02-1p, 2002 WL 34686281, at *7.  In fact, Dr. Siddiqui never used the words "obesity" or "overweight" or otherwise analyzed how Atkinson's weight might affect his functioning.  *See* Docket Item 6 at 466-70.

The failure to address obesity was legal error that may have affected the outcome of the proceeding.  *See* SSR 02-1p, 2002 WL 34686281, at *6 (explaining that "[o]besity can cause . . . limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling"); *see also* 20 C.F.R. § 416.967(a) (explaining that "a sedentary job is defined as one which involves sitting, [but] a certain amount of walking and standing is often necessary in carrying out job duties").  For that reason, the case is remanded so that the ALJ may consider whether Atkinson's obesity affects his RFC.

### 2. Leg Elevation

Atkinson argues that the ALJ erred in failing to incorporate Atkinson's need to elevate his left leg into Atkinson's RFC.  But the VE testified that if an individual needed to elevate his leg while seated, that "would be an accommodation, . . . a minor one." Docket Item 6 at 203.  When asked whether that accommodation would affect the employment numbers the VE had given, he responded, "[p]erhaps slightly, 5, 10%.  I suppose you could say you could lose 5 to 10% of those job numbers." *Id.* at 204.  And the ALJ appropriately relied on that testimony to conclude that "having to keep a leg/foot elevated at waist height would not have a significant impact on sedentary exertional jobs." *Id.* at 21-22.  Thus, the Court finds no error in the ALJ's decision not to include leg elevation in Atkinson's RFC.

### 3. Vertigo

Atkinson also asserts that that the ALJ erred in failing to account for vertigo in his RFC.  The record demonstrates that Atkinson sought treatment for vertigo in September 2014.  *Id.* at 442-43, 447-48.  But, as the ALJ observed, "[o]ne month later[, Atkinson]'s vertigo was improved" and "[t]here was no further treatment for vertigo" after that.  *Id.* at 19.  Thus, the ALJ made a reasonable assessment that Atkinson's vertigo was a temporary—albeit severe—condition that did not require additional limitations in Atkinson's RFC.  *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (explaining that "[t]o show 'disabled' status a claimant must establish 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of *not less than 12 months*" (emphasis added) (quoting 42 U.S.C. § 423(d)(1)(A))).

### 4. Frequent Urination

Finally, Atkinson argues that the ALJ did not consider Atkinson's frequent urination. Atkinson was, as he claims, diagnosed with frequent urination. *See* Docket Item 6 at 447-48; 476. Indeed, the record indicates that he suffered from frequent urination from 2014 until at least 2016 and at times was "urinating almost once [an] hour." *Id.* at 476. But Atkinson never alleged before the ALJ that his frequent urination interfered with his ability to work. *See, e.g.*, Docket Item 6 at 209-10 (alleging disability based on chronic ankle pain, chronic hip pain, and arthritis in left hand); *id.* at 180-81 (no mention of frequent urination in response to "what was keeping you from working at that time?").

Because this Court remands this case on other grounds, however, it need not decide whether the ALJ's failure to address Atkinson's frequent urination would be an independent basis for remand. Given the evidence in the record of Atkinson's need to urinate up to once an hour and the VE's testimony that a person who is off task for more than 15% of the day or who "could only sit, stand[,] and walk for up to an hour at a time" would be unable to work, *id.* at 201-02, the ALJ should consider this issue on remand.

### B.     Developing the Record

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Sec'y of Health & Human Servs.*, 686 F.2d 751, 755 (2d Cir. 1982)); *see also Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (same); 42 U.S.C. § 423(d)(5)(B) (requiring that the Commissioner, prior to rendering any eligibility determination, "make every reasonable effort to obtain from the

individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination"). Thus, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 47); *see also Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) ("[W]hen the claimant is unrepresented, the ALJ is under a heightened duty 'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" (quoting *Echevarria v. Sec'y of Health & Human Svcs.*, 685 F.2d 751, 755 (2d Cir. 1982))). On the other hand, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48)).

The Social Security Administration's own regulations reflect this duty, stating that "[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports." 20 C.F.R. § 404.1512(d)(1). The regulations explain that "every reasonable effort" means that "we will make an initial request for evidence from your medical source or entity that maintains your medical source's evidence," and, "at any time between 10 and 20 calendar days after the initial request, if the evidence has not been received, we will make one follow-up request to obtain the medical evidence necessary to make a determination." *Id.* § 404.1512(d)(1)(i).

Here, the record demonstrates that the ALJ made several attempts to obtain statements from Atkinson's treating physicians. *See* Docket Item 6 at 147-69. Atkinson does not explain why these attempts were insufficient, nor does the Court see how the ALJ failed to comply with the regulations. Thus, the Court would not remand on this basis.[3]

For the reasons explained above, this Court remands the matter for reconsideration of Atkinson's RFC. In particular, the ALJ should consider the effect, if any, of Atkinson's obesity and frequent urination on his functional capacity.

---

[3] The Court "will not reach the remaining issues raised by [Atkinson] because they may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, No. 1:13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) ("Given the need to apply the proper legal standard, the Court will decline at this time to consider whether substantial evidence exists to support the findings the ALJ made.").

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 15, is DENIED, and Atkinson's motion for judgment on the pleadings, Docket Item 10, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:  June 29, 2020
        Buffalo, New York

                                             */s/ Lawrence J. Vilardo*
                                             LAWRENCE J. VILARDO
                                             UNITED STATES DISTRICT JUDGE